UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

KENNETH B. LIFFMAN,
*Individually, as Trustee for the Orangetree*
*Properties, LLC Insurance Trust, and as*
*Trustee for the Kenneth B. Liffman*
*Revocable Trust,*

      Plaintiff,

vs.

ORANGETREE PROPERTIES, LLC, *et al.,*

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO. 1:18-cv-882


OPINION & ORDER
[Resolving Docs. 53, 62, 63, 74, 79, 80, 81, 86, 91, 93, 97]

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Kenneth Liffman, individually, as Trustee for the Orangetree Properties, LLC Insurance Trust, and as Trustee for the Kenneth B. Liffman Revocable Trust, brings this 28 U.S.C. § 1335 interpleader action. Plaintiff Liffman named eight defendants with potentially adverse claims to the life insurance proceeds he asks to interplead. Three defendants have made claims to those proceeds.

For the following reasons, the Court **GRANTS** the Munsell Defendants' motion to partially dismiss the complaint and **DENIES** Plaintiff Liffman's motion for a permanent injunction. As for the claims to the life insurance proceeds, material issues exist regarding the rights to the insurance proceeds at the core of this case. The Court finds this case should proceed to trial to determine who should receive those insurance proceeds.

## I. Background

The parties' relationships and claims are complicated.

Kenneth Liffman, Mark Munsell, and John Goodman were close friends and together invested in real estate. The three men, through their own personal trusts, each owned one-third of Orangetree Properties, LLC, a real estate entity.

Liffman, an attorney, served as trustee for many trusts.

As a brother-figure to Mark Munsell, Liffman became the sole trustee for an irrevocable trust that Munsell created to benefit his children and grandchildren.[1] Munsell created this family trust in 2001 ("Munsell Descendant Trust").[2] Probably because he was an attorney, Liffman also served as trustee for a number of other trusts described in this decision.

Mark Munsell, Kenneth Liffman, and John Goodman were jointly involved in thirteen real estate investments involving thirty-three buildings through numerous separate investment limited liability companies ("LLCs").[3] Others also invested in various Munsell, Liffman, and Goodman's real estate investment LLCs. Often, the real estate development investments borrowed significantly to finance the various real estate investments.

Liffman worked as an attorney. Goodman worked as a financial advisor. Mark Munsell had long worked in real estate and he managed the real estate on behalf of various owner groups. Because Munsell acted as the "Key Man" in managing these investments, real estate investments or their trusts purchased "Key Man" life insurance on Munsell's life, with the purchasing trusts becoming both the owners and beneficiaries. Fairlawn Real Estate Associates LLC was among these entities. Fairlawn Real Estate Associates had

---

[1] Doc. 53-2. Although Mark Munsell's wife Leslie Munsell was originally named a beneficiary, Mark and Leslie Munsell later divorced. She does not make a claim to the Policy proceeds.

[2] Doc. 53-2.

[3] Doc. 61 ¶ 12.

various investors and borrowed more than $60 million to invest in real estate.[4]

In 2007, Fairlawn Real Estate Associates LLC purchased a $5 million dollar "Key Man" life insurance policy on Mark Munsell's life ("Policy").[5] This case centers on this $5 million Policy.

Fairlawn Real Estate Associates owned the Policy and was the Policy beneficiary. Mark Munsell did not personally own the Policy and his family was not a beneficiary under the Policy.

Fairlawn Real Estate Associates later transferred the Policy ownership to an insurance trust to hold the Policy ("Fairlawn Trust").[6] Despite transferring the Policy to Fairlawn Trust, the Fairlawn Trust Agreement ensured that Fairlawn Real Estate Associates remained the only Policy beneficiary.[7] Again, neither Mark Munsell nor the Munsell Descendant Trust had any direct beneficial interest in the $5 million Policy.

As with virtually every trust involved in this case, Liffman served as trustee of the trust that held the Policy for Fairlawn. The Fairlawn Trust Agreement required Trustee Liffman to pay the Policy premiums from the Fairlawn Trust's funds. If Fairlawn Trust had insufficient funds for the premium payments, the Fairlawn Trust Agreement called for Trustee Liffman to give Fairlawn Real Estate Associates notice of the due premiums.[8] And if Fairlawn Real Estate Associates failed to respond with payment, the Fairlawn Trust Agreement said "the Trustee shall be under no obligation to pay such premium or amount,

---

[4] Doc. 53-1 at 108:2–10.
[5] Doc. 69-7; Doc. 69-8; Doc. 53-1 at 106:10–14.
[6] Doc. 69-9.
[7] Doc. 69-9 at Art. IV(B).
[8] Doc. 69-9 at Art. III(B)(1).

and the Trustee shall have the absolute right to allow such insurance to lapse or to terminate this trust with the Trustee having no further obligation or liability to any person, including the Grantor, to any extent whatsoever in the event such premium is not paid."[9]

The Fairlawn Trust required Liffman to claim any life insurance benefits and pay the benefits to Fairlawn Real Estate Associates.[10] The insurance benefits were not payable to either Mark Munsell, the Munsell Descendant Trust, or any other person or entity.

With the 2008 real estate collapse, Fairlawn Real Estate Associates was losing money and could not pay debt service on more than $60 million. Facing unpayable debts, Mark Munsell led a Fairlawn Real Estate Associates restructuring. To restructure, Mark Munsell solicited and received a large outside investment from Rubenstein Partners and also obtained more than $30 million of loan forgiveness by the Fairlawn Real Estate Associates' principal lender.[11]

With the 2012 control transfer to new investor Rubenstein Partners, Fairlawn Real Estate Associates had insufficient monies to pay the $9,519 annual life insurance premium.[12] In a series of communications, Mark Munsell, Goodman, and Liffman agreed the Policy had value and agreed they should try to keep the Policy extant.[13]

Earlier, Fairlawn Trust owned the Policy and received any distributions under the Policy. In 2012, Mark Munsell, Liffman, and Goodman agreed that the Munsell Descendant Trust should seek insurance company approval to obtain 40% Policy

---

[9] Doc. 69-9 at Art. III(B)(1).
[10] Doc. 69-9 at Art. IV(B).
[11] Doc. 69-11.
[12] Doc. 53-1 at 134:4–10.
[13] Docs. 61-11, 61-12, 61-13, 61-14.

ownership and Orangetree Properties, LLC should seek 60% Policy ownership.[14]

Mark Munsell, Liffman, and Goodman exclusively owned Orangetree Properties, LLC through three revocable personal trusts, referred to as the Munsell Personal Trust, Liffman Personal Trust, and Goodman Personal Trust.[15]  The men each owned a one-third ownership interest in Orangetree Properties, LLC.

Liffman created an insurance trust to hold the Policy for Orangetree Properties, LLC's benefit ("Orangetree Trust").[16]  The Orangetree Trust Agreement required the trustee to, in the event of Mark Munsell's death, claim the life insurance benefits and pay the benefits to Orangetree Properties, LLC.[17]  Adding to all the other trusts he supervised, Liffman served as Trustee of Orangetree Trust.

Removing the Policy from the Fairlawn Trust, Liffman transferred 60% of the Policy to "Liffman, as Trustee of the [Orangetree Trust]" and 40% of the Policy to "Liffman, as Trustee [of the Munsell Descendant Trust]."[18]  As a result of the 2012 Policy transfer from Fairlawn Real Estate Associates, Mark Munsell, Liffman, and Goodman would each indirectly benefit from 20% of any life insurance distribution paid to Orangetree Properties, LLC.  Mark Munsell's descendants would benefit from an additional 40% of any life insurance distribution.

When Liffman, as Fairlawn Trust Trustee, had held the Policy for the benefit of Fairlawn Real Estate Associates, Liffman paid the life insurance premiums from the Fairlawn

---

[14] Doc. 61-15.
[15] Doc. 69-2.
[16] Doc. 69-10.
[17] Doc. 69-10 at Art. IV(B).
[18] Doc. 69-27; Doc. 69-28.

Trust monies. Munsell, Liffman, and Goodman now agreed on splitting the life insurance premium payments. Consistent with their ownership interests, Orangetree Properties, LLC paid 60% of the insurance premiums and Mark Munsell personally paid 40% of the insurance premiums on behalf the Munsell Descendant Trust.[19]

In 2012, when Fairlawn Real Estate Associates stopped making life insurance premium payments, Fairlawn Trust Trustee Liffman had complete discretion to end, sell or transfer the Policy.[20] Nothing required Fairlawn Trust Trustee Liffman to offer the Policy to the Munsell Descendant Trust.

As described, with the Fairlawn Trust's demise, Munsell, Liffman, and Goodman agreed to ask the insurer to accept new Policy ownership. The insurer agreed.[21] And as described, Mark Munsell, Liffman and Goodman agreed to split both the beneficiary interests and the premium obligation. They agreed that Mark Munsell would pay 40% of the premium and his family trust would receive 40% of any insurance proceeds. They also agreed that Orangetree Properties, LLC and its Orangetree Trust would pay 60% of the premium and would receive 60% of any benefit distribution.

The Munsell Descendant Trust Agreement authorized its Trustee Liffman, as Trustee of the Munsell Descendant Trust, to invest in life insurance policies.[22] It also gave Trustee Liffman wide discretion to change or cancel the life insurance policy if premium payments were not available:

> A. PAYMENT OF PREMIUMS. The trustee shall have the right to pay premiums on such policies of insurance. If at any time there are insufficient

---

[19] Doc. 61-15.
[20] Doc. 69-9 at Art. III(B)(1).
[21] Doc. 53-4.
[22] Doc. 53-2 at Sec. 2-2.

> assets in the trust to pay such premiums, the trustee shall notify [Mark Munsell] of premiums due on or before the due date of such premiums; but the trustee shall have the absolute right to allow such insurance to lapse, to select any option available under any such policies including conversion to paid-up insurance or surrender for cash value, or to terminate this trust . . . .[23]

Mark Munsell established the irrevocable Munsell Descendant Trust to benefit his family.[24]

The life insurance term policy could be renewed for nine years without new insurability proof.[25]

After Orangetree Trust's and the Munsell Descendent Trust's 2012 assumption of the life insurance policy formerly owned by Fairlawn Trust, Orangetree Properties, LLC and Munsell paid the premium payments for two years. But by June 2014, Mark Munsell told Liffman's assistant that neither Munsell nor Orangetree Properties, LLC had enough money to pay for the life insurance policy on Munsell's life.[26]  Mark Munsell suggested that if Liffman and Goodman "want[ed] to pay 1/3, he could swing that" and that they should "let him know."[27]

Liffman responded, "The [Policy] owner will be revised to be 100% Orangetree if the three of us contribute equally towards the premium."[28]  Munsell agreed.  In his response, Mark Munsell said, "I am good at 1/3 each. ... I know it was to be 60/40.  With my divorce I am trying to reduce expenses.  We can change the terms [to make the Policy

---

[23] Doc. 53-2 at Sec. 2.2.

[24] *See, e.g.*, Doc. 53-2 at Secs. 1.1–1.2.

[25] Doc. 61-13.

[26] Doc. 61-19 at 1 ("Orangetree doesn't have any money and neither does [Mark Munsell] to pay this [life insurance] invoice.").

[27] *Id.*

[28] *Id.*

owner 100% Orangetree]."[29]

With Orangetree Properties, LLC's inability to make premium payments, the only apparent way to continue the Policy would be for Munsell, Liffman, and Goodman to each personally pay one-third of the Orangetree Properties, LLC's 60% premium obligation. Mark Munsell was already paying an additional 40% of the premium payments on behalf the Munsell Descendant Trust.

Apparently, Mark Munsell could not afford to pay both the 40% premium payment on behalf the Munsell Descendant Trust and the additional 20% premium payment needed to cover the Orangetree Properties, LLC payments that Orangetree Properties, LLC could not now afford. Liffman, Munsell and Goodman agreed to split the premium payments three ways. With this agreement that each would be responsible for one-third of the Policy premiums, Munsell, Liffman, and Goodman agreed to transfer the Munsell Descendant Trust's 40% Policy ownership to the Orangetree Trust. Orangetree Trust now owned 100% of the Policy.[30]

Mark Munsell died three years later, on April 27, 2017. In July 2017, the life insurance company paid Orangetree Trust $5,043,739.22 in death benefits.[31]

On November 2, 2017, the Munsell Descendant Trust beneficiaries and the Munsell Descendant Trust's new trustee (collectively, the "Munsells")[32] sued Liffman in state court.[33] They claimed that Liffman engaged in self-dealing for his own personal pecuniary interests

---

[29] *Id.*

[30] Doc. 53-5.

[31] Doc. 61-39.

[32] Daniel Munsell; David S. Munsell, Individually and as Parent and Guardian of other S.M. and other E.M.; Jason I. Munsell; Madison Munsell; Marissa Munsell; Mitchell S. Munsell; and Premier Trust, Inc., as Trustee for the Mark R. Munsell Irrevocable Demand Trust Agreement.

[33] Doc. 69-18.

and committed other trust and fiduciary duty breaches, and that the Munsells were damaged.

In general, the Munsells' state-court complaint argues that Liffman acted unlawfully by breaching trustee and fiduciary duties. Most centrally, the Munsells' state complaint says Liffman violated these duties in 2014 when he transferred the Munsell Descendant Trust's 40% ownership to the Orangetree Trust. Repeating, Liffman had transferred the Policy after Mark Munsell represented that neither he nor Orangetree Properties, LLC could afford continuing insurance premium payments. And Liffman transferred the Munsell Descendant Trust 40% ownership after Goodman and Liffman both agreed to each personally pay one-third of the Policy's premium.

The state-court complaint also focuses on the 2012 Policy transfer from Fairlawn Trust to the Munsell Descendant Trust (40%) and Orangetree Trust (60%). Despite Mark Munsell having no direct ownership interest or beneficial interest in the Fairlawn-owned insurance on his life, and despite Fairlawn Real Estate Associate's signed agreement to the transfer, the Munsell plaintiffs also say that Liffman breached his trustee and fiduciary duties when he transferred only 40% to the Munsell Descendant Trust in 2012, with the remaining 60% going to Orangetree Trust.

In the state court lawsuit, the Munsells claim Liffman's breach of his trustee and fiduciary duties entitle the Munsells to the recovery of 100% of the Policy.

On April 18, 2018, Liffman filed this interpleader action and successfully moved the state court for a stay of those proceedings. In this interpleader action, Liffman names the Munsells and Mark Munsell's creditors, including the United States, as potential claimants

to the Policy proceeds.[34]  With the interpleader action, Liffman seeks, *inter alia*, to disburse the Policy proceeds and to litigate the Munsells' state claims in this federal forum.

As Orangetree Properties, LLC is entitled to the proceeds under the Orangetree Trust Agreement,[35] Orangetree Properties, LLC claims ownership of the Policy proceeds.[36]

The Munsell Defendants respond that Orangetree Properties, LLC should not receive any of the Policy proceeds: "Defendant, Orangetree Properties, LLC does not now, and did not at the time of transfer, have any right to, or a vested ownership interest in, the Policy or its proceeds, whether 60% or 100%."[37]

In claiming that Orangetree Properties, LLC has no legal or equitable ownership right to the Policy proceeds, the Munsell Defendants say that if Liffman breached trust and fiduciary duties owed to them, the Policy 2012 and 2014 ownership transfers would be void, or alternatively, would entitle them to a state law remedy allowing recovery of 100% of the Policy.

But as above described, before 2012, Fairlawn Trust owned the Policy and Fairlawn Real Estate Associates was the sole Policy beneficiary.  So, the Munsell Defendants seem to claim that in 2012 Liffman was required to transfer the Policy to the Munsell Descendant Trust even though the Munsell Descendant Trust had no previous ownership or beneficial interest in the Policy.

The Munsell Defendants argue that in 2012 Liffman was required to transfer the Policy to the Munsell Descendant Trust even though Mark Munsell participated in the

---

[34] Doc. 61.
[35] Doc. 69-10 at Art. IV(B).
[36] Doc. 74.
[37] Doc. 63 at ¶ 38.

decision for the 2012 transfer and even though no evidence suggests the Munsell

Descendant Trust had money to pay the life insurance premiums.  Liffman was also the

Trustee of the Orangetree Trust and presumptively owed Orangetree Properties, LLC

similar trustee and fiduciary duties.

## II. Discussion

Interpleader proceedings "afford[] a party who fears being exposed to the vexation

of defending multiple claims to a limited fund or property that is under his control a

procedure to settle the controversy and satisfy his obligation in a single proceeding."[38]

Interpleader actions usually go through two stages.  First, the court "determines

whether the stakeholder has properly invoked interpleader, including whether the court

has jurisdiction over the suit, whether the stakeholder is actually threatened with double or

multiple liability, and whether any equitable concerns prevent the use of interpleader."[39]

Second, the court determines the rights of the competing claimants to the fund.[40]

During the first stage, the stakeholder deposits the interpleaded funds with the court

registry, or alternatively posts bond.  When the stakeholder himself does not assert a claim

to the interpleader funds, courts usually discharge the stakeholder after this first stage and

releases the stakeholder from liability as to the fund distribution.[41]  At its essence, in

interpleader actions plaintiffs deposit funds with the Court, ask the Court to decide among

claimants and thereby absolve the plaintiff for the distribution directed by the Court.

---

[38] *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (citations omitted).
[39] *Id.* (citation omitted).
[40] *Id.* (citation omitted).
[41] *See id.* at 642 (citation omitted).

## A. The Court Grants Munsells' Motion to Dismiss in Part and to Dismiss the Stakeholder

Munsell Defendants move to dismiss certain portions of the complaint. They also move to dismiss Kenneth Liffman as Trustee of the Orangetree Trust from the action, as the Orangetree Trust Trustee has deposited the interpleader funds and the Court, not Liffman, has responsibility to determine the Policy distribution.[42] Orangetree Properties, LLC, however, would remain in the action as a claimant to the life insurance proceeds.

### 1. The Court Does Not Have Subject-Matter Jurisdiction Over the Later-Added Portions of the Complaint

Early in this action, the Court found subject-matter jurisdiction over Liffman's interpleader complaint to disburse the Policy proceeds.[43] Since then, however, Liffman has significantly amended the complaint.[44]

First, going beyond the interpleader claim, Liffman has added Counts I to VI.

Second, in addition to bringing the action in his Orangetree Trust Trustee capacity ("Stakeholder Liffman"), Liffman now also sues in his individual capacity ("Individual Liffman") and his capacity as Trustee of the Liffman Personal Trust ("Liffman Personal Trust").

The Court does not have subject-matter jurisdiction over the later-added Individual Liffman and Liffman Personal Trust parties because they are not interpleader stakeholders and they do not directly make a claim to the interpleader funds.

Neither Individual Liffman nor the Liffman Personal Trust are interpleader

---

[42] Doc. 62. Plaintiff Liffman opposes. Doc. 78. Munsell Defendants reply. Doc. 82.

[43] Doc. 19 at 1 (ruling on the Original Complaint, Doc. 1).

[44] *Compare* Original Compl., Doc. 1, *with* Second Amended Compl., Doc. 61.

stakeholders.[45]

Though modern interpleader also permits interpleader plaintiffs to make a claim to interpleader funds, neither Individual Liffman nor Liffman Personal Trust have made a direct claim to the Policy benefits. Both Individual Liffman and the Liffman Personal Trust have only an indirect interest in the Policy proceeds.[46]

Liffman Personal Trust owns one-third of Orangetree Properties, LLC. Not enough to give Liffman personally an interest in the Policy proceeds. While Liffman Personal Trust may have input to Orangetree Properties, LLC's claim, the claim remains Orangetree Properties, LLC's claim. Although the Liffman Personal Trust owns one-third of Defendant Orangetree Properties, LLC, his personal trust is not necessary to resolving this interpleader case.

Individual Liffman is the defendant in the pending, but stayed, state court action brought by the Munsells.[47] With Counts I to VI in this action, Individual Liffman seeks declaratory rulings on the state court claims against him and the affirmative defenses he raises.[48]

In this interpleader action, the Munsells' cross-claim challenges Orangetree Properties, LLC's right to the insurance proceeds with an argument that in 2012 Liffman

---

[45] The interpleader statute limits who can bring an interpleader action to stakeholders who have "custody or possession" of property or money valued at $500 or more and who deposit it in the Court registry or post bond. 28 U.S.C § 1335. In this case, only Stakeholder Liffman possessed and deposited the interpleader funds. Named as the Policy's owner and beneficiary when Mark Munsell died, MetLife issued the Policy proceeds to Orangetree Trust. Doc. 61 ¶ 8. Stakeholder Liffman thereafter deposited the proceeds in the Court registry. Doc. 75.

[46] Liffman Personal Trust, and Individual Liffman by and through the Liffman Personal Trust, have an ownership interest in Orangetree Properties, LLC.

[47] *Premier Trust, Inc. ex rel. Trustee for Mark R. Munsell Irrevocable Demand Trust Agreement v. Liffman*, No. CV-17-888443 (Cuyahoga County Ct. of Common Pleas filed Nov. 2, 2017); Doc. 69-18.

[48] Counts I to VI are the later-added claims that seek a declaratory judgment concerning the "rights, duties, and obligations of the parties as to the controversies herein, and as to the proceeds of the Policy" (Count I) and as to the validity of various affirmative defenses (Counts II to VI). Doc. 61.

was required to transfer the entire Policy from Fairlawn Trust to the Munsell Descendant Trust. They join this with an argument that in 2014 Liffman should not have later transferred the Munsell Descendant Trust's remaining 40% to the Orangetree Trust. And the Munsells argue that Liffman was required to give it to the Munsell Descendant Trust and to pay the Policy premiums even though Mark Munsell agreed with Liffman's acts and though Mark Munsell did not have enough income to pay the Policy premiums.

The Munsells have already sued Liffman in state court alleging trustee misconduct claims. The Court will not run parallel litigation on the claims against Liffman in this case.

The Court dismisses Individual Liffman and Liffman Personal Trust for lack of standing and subject-matter jurisdiction. For the same reasons, the Court also does not have subject-matter jurisdiction over the later-added Counts I to VI, as they exceed the scope of this interpleader action.

But while this Court will not take over the trustee and fiduciary breach claims against Liffman, the Munsells make those same fiduciary claims the cornerstone of their argument that Orangetree Properties, LLC should not receive any Policy proceeds.

Because this Court must decide who gets the Policy proceeds, this Court will need consider whatever arguments the Munsells make against Orangetree Properties, LLC's claim. The Court will not directly try the breach of duty claims but the Court will receive whatever evidence Orangetree Properties, LLC and the Munsells offer to establish their rights to the Policy proceeds.

Because the Munsells apparently need to succeed on their Liffman breach of duty claims to dislodge Orangetree Properties, LLC's right to the Policy benefits, the Court will

need consider the Munsells' argument to dislodge the Orangetree Properties, LLC's benefits claim.

Liffman alternatively argues that even if the Court does not have subject-matter jurisdiction over his later-added Counts, the Munsells should be barred from pursuing their trustee misconduct claims against Liffman in future litigation. Liffman argues that these claims are compulsory counterclaims that Munsells waived by not asserting them against Individual Liffman in this interpleader action.

The Munsells chose to avoid making direct breach of trust and fiduciary claims against Liffman in this action. But they relatedly say that Orangetree Properties, LLC has no interest in the Policy proceeds because of their claims about Liffman's breach of trust and fiduciary duties.

Because the Munsell Descendant Trust does not counterclaim against Individual Liffman, it is not clear that any judgment in favor of the Munsells and against Orangetree Properties, LLC would have any res judicata effect as to Liffman.

Interpleader equitable factors suggest that the Munsells' claims against Liffman are not compulsory counterclaims. The Munsells brought their claims in the state court first. Their claims also are "vastly more extensive than the confines of the 'fund.'"[49]

In state court, the Munsells claim breach of trust, breach of fiduciary duty, fraudulent concealment, civil theft, unjust enrichment, and conversion against Individual Liffman. In addition to seeking recovery of the Policy proceeds, the Munsells also seek

---

[49] *See Reliance Nat. Ins. Co. v. Great Lakes Aviation, Ltd.*, 12 F. Supp. 2d 854, 858 (C.D. Ill. 1998) (explaining that, in this situation, "interpleader cannot 'be employed to accomplish purposes that exceed the needs of orderly contest with respect to the fund'" (quoting *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533–34 (1967))).

independent compensatory damages, punitive damages, treble damages, and attorney fees.

In the state court action, the Munsells make claims significantly broader than the claims in this lawsuit.

As described, Mark Munsell initiated the idea of giving Orangetree the 100% 2014 interest when Orangetree Properties, LLC and Mark Munsell were unable to make policy premium payments. And in 2012, Mark Munsell was Sole Member and Manager of Fairlawn Real Estate Associates when it consented to give the Policy ownership jointly to Munsell Descendant Trust and Orangetree Trust.

And when insufficient assets were available to pay premiums, the Munsell Descendent Trust gave Liffman "the absolute right to allow such insurance to lapse, to select any option available under any such policies including conversion to paid-up insurance or surrender for cash value, or to terminate this trust." Liffman has defenses to the state law claims. And Orangetree Properties, LLC may use similar defenses in beating back the Munsells' argument that Orangetree Properties, LLC has no interest in the Policy proceeds.

But interpleader actions are, to major degree, declaratory actions. Federal district courts enjoy significant discretion regarding whether they accept declaratory actions. Against the backdrop of an earlier filed state case, this Court declines to supplant the state court's litigation on the trustee misconduct claims against Liffman.

It is true that this litigation may affect the state-court litigation. If Orangetree Properties, LLC beats back the Munsells' argument that Orangetree Properties, LLC never received any interest in the Policy because Liffman broke a trust duty, the Munsells' state

court breach of fiduciary duty claim might be affected.

However, at this point Court declines to decide what res judicata impact this Court's judgment on the Munsells' state court breach of fiduciary claims.

### 2. The Court Dismisses Stakeholder Liffman

Having dismissed the later-added Plaintiff capacities and Counts I to VI, only Liffman as interpleader plaintiff and his interpleader claim remain. Interpleader Liffman has deposited the interpleader funds with the Court registry. Liffman also asserts no direct claim to the interpleader funds, and no claimants have asserted a counterclaim against him or objected to his dismissal.

Accordingly, the Court grants the Munsells' motion to dismiss Interpleader Plaintiff Liffman.

Despite asserting no direct claim to the interpleader funds, Plaintiff Liffman has actively participated in the second-stage briefing to determine claimants' rights to the Policy proceeds. Liffman advocates for Orangetree Properties, LLC to receive the Policy proceeds; even if Liffman is individually dismissed from this case, he has a non-party interest in this case's treatment of Orangetree Properties, LLC.[50]

Having dismissed Stakeholder Liffman from the action, the Court now denies Liffman's summary judgment filings as moot.[51] Without a direct claim to the interpleader funds, Liffman does not have standing to directly litigate the issue of who is entitled to the funds.

---

[50] *See* Docs. 66–70 (Liffman and Orangetree Properties, LLC filing nearly identical opposition briefs responding to the Munsells' summary judgment motion).

[51] Docs. 79, 80, 86.

## B. The Court Denies Plaintiff Liffman's Motion for a Permanent Injunction

Plaintiff Liffman moves the Court under 28 U.S.C. § 2361 for a permanent injunction enjoining Defendants from initiating a state or federal proceeding affecting the Policy proceeds, obligations, or issues involved in the interpleader action.[52] The Munsells and the United States[53] oppose the motion.[54]

The Court denies Liffman's motion for a permanent injunction.

Plaintiff Liffman primarily seeks to enjoin the Munsells' pending state court action.

Because courts enjoy discretion to decide whether to permanently enjoin claimants from initiating other proceedings that could affect the fund's distribution,[55] the Court declines to issue an injunction. There is "no real threat" of additional lawsuits against Stakeholder Liffman as to the Policy proceeds.[56] No one appears to claim that Stakeholder Liffman breached his trust and fiduciary duties under the Orangetree Trust Agreement.

## C. The Case Will Proceed to Trial

Now for the merits of the claims. Plaintiff Liffman has represented that eight adverse claimants potentially are entitled to the Policy proceeds.[57] Of those, three—Orangetree

---

[52] Doc. 81. Munsells and the United States oppose. Doc. 85, 90. Liffman replies. Doc. 92. Munsells surreply. Doc. 93. Liffman opposes the surreply. Doc. 96. Moreover, the Court **GRANTS** Liffman's motion for an extension to file the reply, Doc. 91, and the Munsells' motion for leave to file a surreply. Doc. 93.

[53] Plaintiff Liffman improperly named and served the United States Treasury Department and the Internal Revenue Service, as opposed to the United States. Doc. 97 at 1.

[54] Doc. 85; Doc. 90. Replying, Liffman concedes that an injunction against the United States would be improper. Doc. 92.

[55] *See, e.g., Shell Pipe Line Corp. v. W. Texas Mktg. Corp.*, 540 F. Supp. 1155, 1162 (S.D. Tex. 1982) (stating that the section 2361 injunction is "entirely within the discretion of the district judge" once the procedural prerequisites of statutory interpleader are satisfied).

[56] 7 Charles Alan Wright *et al.*, Federal Practice & Procedure § 1717 (3d ed. 2018).

[57] Orangetree Properties, LLC; the Munsells; Leslie S. Munsell; United States; Ohio Department of Taxation; Chemical Bank; UI Commerce Park LLC; and Commerce Park IV & V Associates LLC.
    As most potential claimants are creditors of Mark Munsell's Estate who have already asserted claims that were resolved in probate court, they do not assert claims in this interpleader action.

Properties, LLC, the Munsells, and the United States—have filed claims to the proceeds.[58]

Orangetree Properties, LLC claims the Policy proceeds because in 2012, Orangetree Properties, LLC obtained a 60% Policy interest. After Mark Munsell's 2014 inability to afford the insurance premium payments, Munsell, Goodman, and Liffman transferred the Munsell Descendant Trust's remaining 40% Policy ownership to the Orangetree Trust. Orangetree Trust owned 100% of the Policy when Mark Munsell died. Orangetree Properties, LLC says it should receive the proceeds under the Orangetree Trust Agreement terms.

But the Munsell Defendants challenge Orangetree Properties, LLC's right to the proceeds. The Munsell Defendants allege that Liffman had a conflict of interest when in 2012 Fairlawn Real Estate Associates gave up the Policy and the Policy was transferred to both Orangetree Trust and the Munsell Descendant Trust. The Munsell Defendants also challenge the 2014 decision to transfer the whole Policy to Orangetree Trust when Mark Munsell and Orangetree Properties, LLC could no longer afford premium payments.

The Munsell Defendants thus argue that "Orangetree Properties, LLC does not now, and did not at the time of transfer, have any right to, or a vested ownership interest in, the Policy or its proceeds."[59]

Orangetree Properties, LLC disagrees. It says that before 2012, Fairlawn Trust

---

[58] Munsells' Crossclaim against Orangetree Properties, Doc. 63; Orangetree Properties' Crossclaim Against All Defendants, Doc. 74 (incorporating Doc. 25); United States' Answer & Claim, Doc. 97.

Munsells move for summary judgment as to Liffman's complaint, their crossclaim against Orangetree Properties, and Orangetree's crossclaim. Doc. 53. Orangetree Properties opposes. Docs. 67, 69, 70. Munsells reply. Doc. 72.

Leslie Munsell, who is Mark Munsell's ex-wife, filed an answer but does not claim the Policy proceeds. Doc. 64. Chemical Bank, who filed two probate court claims against Mark Munsell's Estate, filed an answer but does not appear to assert a claim here. See Doc. 73 (requesting that its probate court claims be preserved and that any funds this Court determines to be owed to the Mark Munsell Estate will "be distributed through the Probate Court procedures").

[59] Doc. 63 at ¶ 38.

owned the Policy and Fairlawn Real Estate Associates was entitled to any Policy proceeds. After the 2012 Fairlawn Real Estate Associates restructuring, Fairlawn was no longer going to continue the Policy. Mark Munsell, Liffman, and Goodman (each owners of Orangetree Properties, LLC) agreed to have Orangetree Trust pick up 60% of the Policy and the Munsell Descendant Trust took ownership of the other 40%. Similarly, in 2014, Orangetree Properties, LLC says Mark Munsell, Liffman, and Goodman picked up the balance of the Policy ownership only when Mark Munsell and Orangetree Properties, LLC could not afford their respective premium payments.

Orangetree Properties, LLC also asks the Court to decide the legality of how it came to have the Policy proceeds. Put differently, Orangetree Properties, LLC seeks a declaration that the Munsells are wrong in claiming that Orangetree Properties, LLC has no interest in the Policy.

Because both the Munsell Defendants and Defendant Orangetree Properties, LLCs make legitimate claims to the Policy benefits, the Court finds these issues should go forward for trial.

The United States also makes a legitimate claim to the Policy proceeds. Before Mark Munsell's death, the United States had filed federal tax lien notices against Mark Munsell for unpaid income taxes of $50,089.53 and $274,670.86 for 2012 and 2013, respectively.[60] Mark Munsell's Estate did not file any estate tax returns in the probate proceedings.[61] Accordingly, the United States has asked the Court to (i) attach the 2012

---

[60] Docs. 61-34, 61-35. These federal tax liens were initially filed against both Mark Munsell and Leslie Munsell, but the United States subsequently granted Leslie Munsell innocent spouse relief for both debts. *Id.*; Doc. 97 ¶ 27.

[61] Doc. 90 at 3.

and 2013 tax liens to the interpled funds; and (ii) order that the associated outstanding

taxes, penalties, and interest be taken from the interpled funds consistent with the law.[62]

The United States may have rights to at least a portion of the Policy proceeds

depending on the outcome between Orangetree Properties, LLC and the Munsells. If

Orangetree Properties, LLC wins, the United States may be entitled to collect the unpaid

income tax debts and associated penalties and interest from at least any Policy recovery by

the Munsell Personal Trust, which owns one-third of Orangetree Properties, LLC.  If the

Munsell Defendants win their argument, however, the Policy proceeds will go to the

Munsell Descendant Trust, an irrevocable trust that potentially shields the proceeds from

Mark Munsell's creditors.

The United States should be prepared to argue how much of the Policy proceeds it

is entitled to, depending on the outcome as between Orangetree Properties, LLC and the

Munsells.

Accordingly, this case will go forward for trial on the claims by the Munsells,

Orangetree Properties, LLC, and the United States that they are entitled to the Policy

benefits.

---

[62] Doc. 97.

## IV. Conclusion

For the reasons stated, the Court **GRANTS** the Munsell Defendants' motion to partially dismiss the complaint and **DENIES** Plaintiff Liffman's motion for a permanent injunction.  The case will proceed to trial on the issue of which claimant or claimants are entitled to the Policy proceeds.

IT IS SO ORDERED.


Dated:  January 23, 2019                          _s/        James S. Gwin_____
                                                             JAMES S. GWIN
                                                             UNITED STATES DISTRICT JUDGE